1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DEV PATEL,                              No.  2:15-cv-2471-KJN

12              Plaintiff,
                                            ORDER
13        v.

14   STATE OF CALIFORNIA, et al.,

15              Defendants.

16

17        On April 13, 2017, this action was before the undersigned to address defendant State of

18   California Department of Toxic Substances' ("DTSC") motion for summary judgment or, in the

19   alternative, summary adjudication.[1]  (ECF No. 26.)  Plaintiff Dev Patel ("plaintiff") filed a written

20   opposition to DTSC's motion and DTSC filed a reply.  (ECF Nos. 27, 31.)  Attorney Richard

21   Rogers appeared at the hearing on behalf of plaintiff.  Attorney Jerry Deschler, Jr. appeared at the

22   hearing on behalf of DTSC.

23        The undersigned has fully considered the parties' briefs, evidence, appropriate portions of

24   the record, and oral arguments.  For the reasons that follow, the court denies DTSC's motion for

25   summary judgment.

26   _____

27   [1] This action proceeds before the undersigned pursuant to the parties' consent to the jurisdiction
     of a United States Magistrate Judge for all further proceedings in this case, including trial the
28   entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1).  (ECF Nos. 11, 13.)

                                        1

I.      LEGAL STANDARDS

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." It further provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] A shifting burden of proof governs motions for summary judgment under Rule 56. Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010). Under summary judgment practice, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").

If the moving party meets its initial responsibility, the opposing party must establish that a genuine dispute as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). To overcome summary judgment, the opposing party must demonstrate the existence of a factual dispute that is both material, i.e., it affects the outcome of the claim under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d

---

[2] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1025, 1031 (9th Cir. 2010), and genuine, i.e., " 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' " FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248). A party opposing summary judgment must support the assertion that a genuine dispute of material fact exists by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[3] Fed. R. Civ. P. 56(c)(1)(A)-(B). However, the opposing party "must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

In resolving a motion for summary judgment, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. Moreover, all reasonable inferences that may be drawn from the facts placed before the court must be viewed in a light most favorable to the opposing party. See Matsushita, 475 U.S. at 587; Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). However, to demonstrate a genuine factual dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citation omitted).

II.     DTSC'S EVIDENTIARY OBJECTIONS

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "[T]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil

---

[3] "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Moreover, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

1  Procedure 56." Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (quoting Block v. City

2  of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001)) (internal quotation marks omitted).  Even

3  if the non-moving party's evidence is presented in a form that is currently inadmissible, the court

4  may still evaluate that evidence on a motion for summary judgment so long as the moving party's

5  objections could be cured at trial.  See Burch v. Regents of the Univ. of Cal., 433 F.Supp.2d

6  1110, 1119-20 (E.D. Cal. 2006).

7          Here, DTSC provides objections in its reply briefing to plaintiff's declaration submitted in

8  opposition to DTSC's motion on the basis that it contains irrelevant information, contains

9  impermissible hearsay, and demonstrates plaintiff's lack of personal knowledge.  (ECF No. 31-2.)

10  More specifically, defendant objects to four specific passages from plaintiff's declaration on these

11  bases.  (Id.)  The court addresses each of DTSC's objections in turn.

12          First, the court declines to address any of DTSC's relevance objections.  Because the court

13  may rely only on relevant evidence in addressing the motion, its citation to evidence subject to a

14  relevance objection means the objection has been overruled.  Mayes v. Kaiser Found. Hospitals,

15  2014 WL 2506195, at *2 (E.D. Cal. June 3, 2014); Burch v. Regents of Univ. Of Cal., 433

16  F.Supp.2d 1110, 1119 (E.D. Cal. 2006) (stating that relevance objections are redundant because a

17  court cannot rely on irrelevant facts in resolving a summary judgment motion); see also Stonefire

18  Grill, Inc. v. FGF Brands, Inc., 987 F. Supp. 2d 1023, 1033 (C.D. Cal. 2013).

19          Second, DTSC argues that plaintiff's statements in the declaration regarding what others

20  told him during the settlement proceedings before the California State Personnel Board are

21  impermissible hearsay.  However, it is clear that plaintiff introduces these statements, at least for

22  purposes of opposing DTSC's present motion for summary judgment, for the purpose of

23  demonstrating their effect on plaintiff, not for the truth of the matter asserted in each statement.

24  Indeed, for each potential hearsay statement contained in plaintiff's declaration, plaintiff provides

25  a further explanation of the effect those statements had on him as the listener.  The use of the

26  statements for such a purpose does not constitute hearsay.  Schindler v. Seiler, 474 F.3d 1008,

27  1011 (7th Cir. 2007) ("[A] statement offered to show its effect on the person who heard the

28

4

statement is not hearsay."). Therefore, DTSC's objections based on hearsay are overruled.[4]

Finally, DTSC objects that plaintiff's declaration lacks personal knowledge with regard to the statements made by third parties. However, plaintiff states in his declaration that he was present when such statements were made, therefore establishing his personal knowledge. Accordingly, DTSC's objections on the basis that plaintiff lacks personal knowledge are overruled.[5]

III.    UNDISPUTED FACTS

Unless otherwise noted by the court that the parties disagree upon a particular fact, all facts referred to below are undisputed by the parties.[6] The court does not cite to any facts that are irrelevant to the resolution of the pending motion.

Plaintiff began working for defendant the State of California Department of Public Health ("CDPH"), which is not a party to the present motion, in July of 2009, as an Associate Governmental Programs Analyst ("AGPA"). (First Amended Complaint ["Am. Compl."] ¶ 4.) On June 14, 2013, plaintiff transferred to DTSC after obtaining a position in that agency as a Staff Services Manager I ("SSM-I"). (Am. Compl. ¶ 10; Deposition of Dev Patel ["Patel Depo."] 32:21-33:7.) During plaintiff's probationary period, DTSC rated plaintiff's overall performance as "improvement needed" on his two probation reports. (Patel Depo. 199:17-22, 200:4-24, 224:7-225:11, 229:17-230:17, Exhs. K, O.) Plaintiff also received over that same span of time three counseling memoranda, the first on April 28, 2014, the second on May 9, 2014, and the third on May 28, 2014. (Patel Depo. 245:19-23, 246:25-247:1, 247:7-15, 249:24-250:24, 252:17-25, Exhs. S, T, U.) At the end of plaintiff's probationary period in his role as an SSM-I, DTSC

---

[4] Furthermore, plaintiff could cure DTSC's current hearsay objections at trial by calling the actual declarants of those statements to testify. See Burch, 433 F.Supp.2d at 1119-20.

[5] With regard to the fourth passage, DTSC also objects on grounds that it constitutes plaintiff's impermissible lay opinion. This objection is also overruled because that passage merely provides plaintiff's own understanding of what he believed the settlement agreement's EEOC language to mean based on what he was told by others, not his opinion as to the legal effect of that language.

[6] Plaintiff states in his response to DTSC's statement of undisputed facts that he admits each undisputed fact DTSC represents and agrees that the evidence DTSC cites to in support of each of those facts actually supports the corresponding factual assertion. (ECF No. 28.)

rejected plaintiff from that position, effective June 11, 2014.  (Patel Depo. 33:8-11, 238:1-10, Exh. P.)

Plaintiff appealed his rejection from the SSM-I position before the California State Personnel Board ("SPB").  (Patel Depo. 102:25-105:6, 191:23-193:16, 238:11-14.)  Plaintiff also filed a "Whistleblower Retaliation Complaint" with the SPB on September 2, 2014, alleging, among other things, that he was "retaliated against . . . [a]s a result of having reported improper governmental activities (discrimination, harassment) . . ."  (Patel Depo. 240:15-25, Exh. Q.)  On April 8, 2014, plaintiff filed a charge of discrimination based on race (Asian), national origin (India), and retaliation with the Equal Employment Opportunity Commission ("EEOC") based on a claim that his supervisor issued a negative probationary report after he had informed her of discriminatory disciplinary practices he claimed he had witnessed.  (Am. Compl. ¶¶ 18-21, Exh. 2.)  Plaintiff filed an additional charge for retaliation with the EEOC on November 11, 2014, based on his claim that his supervisor rejected him from his position as an SSM-I in retaliation for his filing the April 8, 2014 EEOC charge.  (Id. ¶¶ 18-21, Exh. 3.)

On November 12, 2014, plaintiff executed a Settlement Agreement with DTSC resolving his appeal before the SPB in exchange for DTSC paying him $12,500 and withdrawing the Notice of Rejection relating to DTSC's rejection of plaintiff from the SSM-I position, and all documentation supporting that rejection.  (Patel Depo. 243:10-15, 244:21-25, 245:5-11, Exh. R.) The Settlement Agreement contains the following release language:

> With the exception of [plaintiff's] charge(s) filed as of the date of this Settlement Agreement with the Equal Employment Opportunity Commission, [plaintiff], in exchange for the consideration set forth in this Settlement Agreement, hereby releases the State of California, [DTSC], and [DTSC's] agents, representatives, employees, successors and assigns, from any and all demands, actions, causes of action, grievances, claims of any kind or nature whatsoever, known and unknown, anticipated or unanticipated, past or present, and any claim under state or federal law including, but not limited to, claims under the Fair Employment and Housing Act and Title VII of the 1964 Civil Rights Act, which may exist as of the date hereof in connection with or arising out of the actions taken by the Respondent regarding the Notice of Rejection or the Patel Whistleblower Complaint.

(Patel Depo. Exh. R.)  The Settlement Agreement also contains a waiver of plaintiff's rights under California Civil Code section 1542, and contains an acknowledgement by plaintiff that "[plaintiff] is familiar with, has read the provisions of, or has consulted with counsel regarding California Civil Code section 1542." (Id.)  The Settlement Agreement provides further, "[t]his release shall not apply to any Workers' Compensation claim made by [plaintiff], nor shall it apply to any other claim which [plaintiff] cannot waive under law." (Id.)  Finally, the Settlement Agreement set forth plaintiff's acknowledgement that he has voluntarily exercised his right to reinstatement in his former position with CDPH's "Division of Drinking Water and Environmental Management." (Id.)

The Settlement Agreement was negotiated and signed by both plaintiff and his Labor Relations Representative, Yvonne Placsek, at a Prehearing Settlement Conference at the SPB that was presided over by an administrative law judge. (Patel Depo. 243:10-15, 244:21-25, 245:5-11, Exh. R.)  The SPB approved the Settlement Agreement. (Id.)

In compliance with the terms of the Settlement Agreement, DTSC withdrew the Rejection on Probation and all supporting documentation, including the probationary reports and counseling memoranda, from plaintiff's Official Personnel File. (Declaration of Tiffany Taylor ["Taylor Decl."] ¶¶ 8-9, Exh. 1.)  By April of 2015, plaintiff was reinstated in his position with the Division of Drinking Water and Environmental Management. (Patel Depo. 33:8-34:3, 38:22-24.) Plaintiff subsequently obtained right-to-sue letters from the EEOC regarding the two charges he had filed with that Commission against DTSC, and then filed the present action asserting claims based on those charges in this court on November 30, 2015. (Am. Compl. ¶ 21.)

IV.    DISCUSSION

In his operative first amended complaint, plaintiff asserts the following five claims against DTSC:  (1) national origin discrimination in violation of Title VII (42 U.S.C. § 2000e-2(a)(1)); (2) national origin discrimination in violation of the California Fair Employment and Housing Act ("FEHA") (Cal. Gov. Code § 12940(a)); (3) retaliation in violation of Title VII (42 U.S.C. § 2000e-3(a)); (4) retaliation in violation of the FEHA (Cal. Gov. Code § 12940(h)); and (5) failure to take reasonable steps to prevent discrimination and harassment in violation of the

FEHA (Cal. Gov. Code § 12940(k)).  (Am. Compl. ¶¶ 3-40.)

DTSC argues that it is entitled to summary judgment as to all of plaintiff's claims asserted against it in this action based on the release of liability clause contained in the Settlement Agreement plaintiff executed on November 12, 2014, which was approved by the SPB.  More specifically, DTSC contends that the release clause contained in that agreement clearly and unambiguously extinguished plaintiff's claims he asserts against that DTSC regardless of the fact that the release contains an exception for plaintiff's charges that were pending before the EEOC as of November 12, 2014, on which plaintiff's present claims are based.  DTSC argues in the alternative that, regardless of whether the release precludes plaintiff's claims, it is still entitled to summary judgment with regard to plaintiff's claims based on theories of discrimination and retaliation because DTSC removed the Notice of Rejection and all records of employee discipline relating to the events alleged against it in this action, therefore demonstrating that DTSC, in effect, took no adverse employment action against plaintiff.  The court addresses each of these contentions in turn.

A.  Whether the Waiver Provision of the Settlement Agreement Extinguished Plaintiff's Claims Against DTSC

First, DTSC argues that all of plaintiff's current claims against it are barred under the terms of the November 12, 2014 Settlement Agreement between plaintiff and itself that included the following clause regarding the release of liability:

> *With the exception of [plaintiff's] charge(s) filed as of the date of this Settlement Agreement with the Equal Employment Opportunity Commission*, [plaintiff], in exchange for the consideration set forth in this Settlement Agreement, hereby releases the State of California, [DTSC], and [DTSC's] agents, representatives, employees, successors and assigns, from any and all demands, actions, causes of action, grievances, claims of any kind or nature whatsoever, known and unknown, anticipated or unanticipated, past or present, and any claim under state or federal law including, but not limited to, claims under the Fair Employment and Housing Act and Title VII of the 1964 Civil Rights Act, which may exist as of the date hereof in connection with or arising out of the actions taken by the Respondent regarding the Notice of Rejection or the Patel Whistleblower Complaint.

1    (Patel Depo. Exh. R (emphasis added)).  DTSC contends that this language unambiguously

2    precludes any and all claims plaintiff may have arising from the actions and events alleged in his

3    amended complaint with regard to DTSC, with the sole exception of plaintiff's then-existing

4    charges filed with the EEOC.  DTSC argues that the carve out for plaintiff's EEOC charges says

5    nothing about plaintiff's ability to later pursue civil claims in court based on those charges.

6    Accordingly, DTSC asserts, the plain language of the Settlement Agreement demonstrates that

7    plaintiff has released all claims against DTSC, with the sole exception of his charges before the

8    EEOC at the time that agreement was executed to the extent those charges could be asserted

9    before that administrative tribunal.  According to DTSC's interpretation of the release, plaintiff

10    cannot further pursue those EEOC charges through the subsequent civil claims he has filed in this

11    court.

12            Plaintiff responds that the exception language of the release in the Settlement Agreement

13    lacks clarity and is ambiguous to the point that it creates a genuine issue of material fact as to

14    whether plaintiff's acceptance of the terms of that agreement constituted a voluntary, deliberate,

15    and informed waiver of his right to pursue the claims against DTSC at issue in this action.

16            "'The construction and enforcement of settlement agreements are governed by principles

17    of local law which apply to interpretation of contracts generally.'"  United Commercial Ins. Serv.,

18    Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992) (quoting Jeff D. v. Andrus, 899 F.2d

19    753, 759 (9th Cir. 1989)).  "This is true even though the underlying cause of action is federal."

20    Id.  "A settlement agreement is treated as any other contract for purposes of interpretation."  Id.

21    Under California law, "[t]he language of a contract is to govern its interpretation, if the language

22    is clear and explicit, and does not involve an absurdity."  Cal. Civ. Code § 1638.  In construing

23    the language of a contract, "the intent of the parties determines the meaning of the contract."

24    United Commercial Ins. Serv., Inc., 962 F.2d at 856 (citing Cal. Civil Code §§ 1636, 1638).

25    However, "[t]he relevant intent is 'objective'—that is, the intent manifested in the agreement and

26    by surrounding conduct—rather than the subjective beliefs of the parties."  Id.  "For this reason,

27    the true intent of a party is irrelevant if it is unexpressed."  Id. (citing Union Bank v. Winnebago

28    Indus., 528 F.2d 95, 99 (9th Cir. 1975)).

1       Applying these principals to the release language in the Settlement Agreement here, it is

2 clear that DTSC cannot prevail on summary judgment.  The language of the carve out for

3 plaintiff's then-existing EEOC claims is silent as to whether that exemption also exempts any

4 claims plaintiff may assert in a civil action based on those charges upon plaintiff's receipt of a

5 right-to-sue letter from the EEOC.  While DTSC contends that the exemption language should be

6 construed to mean that plaintiff could pursue his then-existing charges before the EEOC only to

7 the extent he could within that administrative forum, plaintiff puts forward an interpretation that

8 is at least equally as plausible as the one DTSC advances:  that the carve out also permitted

9 plaintiff to file civil claims in court based on his then-existing EEOC charges if he first exhausted

10 his remedies with that administrative body.  Furthermore, plaintiff's declaration shows that

11 plaintiff had his union representative present during the proceeding during which the Settlement

12 Agreement was executed; plaintiff's representative discussed the meaning of the exemption for

13 plaintiff's then-existing EEOC charges with DTSC's attorney; and plaintiff's representative

14 subsequently explained to plaintiff before plaintiff signed the Settlement Agreement that the

15 release language contained in that document did not bar plaintiff from pursuing litigation based

16 on his then-pending EEOC charges.  (Declaration of Dev Patel ["Patel Decl."] ¶¶ 2-3, 8.)  Such

17 evidence of the parties' conduct, taken in conjunction with the ambiguous nature of the

18 exemption provision within the Settlement Agreement's release clause, creates a genuine issue of

19 material fact as to whether the parties actually intended the release to preclude plaintiff's claims

20 at issue in this action, which are all based on the EEOC charges clearly exempted from that

21 release.

22       Furthermore, the cases DTSC cites to in support of its argument that the written language

23 of the Settlement Agreement bars plaintiff's claims are largely inapplicable to the situation

24 presented by the evidence in this case because, unlike the release language at issue here, the

25 language of the releases in those cases all clearly and unambiguously demonstrated that the

26 plaintiff's claims were not covered by any exemption language.  See Shaw v. City of Sacramento,

27 250 F.3d 1289, 1293 (9th Cir. 2001) (finding the release language, which contained no carve outs,

28 to be clear and unambiguous); Gaub v. Prof'l Hosp. Supply, Inc., 845 F. Supp. 2d 1118, 1129-30

10

(D. Idaho 2012) (general release with no exceptions stated in clear and unambiguous language); Sirisup v. It's Thai, L.L.C., 2015 WL 6181688, at *5-*7 (C.D. Cal. Oct. 21, 2015) (language of release, including the carve out provision for trademark issue at issue in a pending action, was clear and unambiguous in setting forth the extent of what was and was not precluded by the release). Here, the carve out language in the Settlement Agreement regarding plaintiff's EEOC charges fails to clearly specify whether that exemption extends to plaintiff's present claims based on those charges. Furthermore, the parties provide competing interpretations of that provision that are both reasonable and supported by admissible evidence presented in connection with the present motion for summary judgment. Accordingly, the court must deny DTSC's motion for summary judgment to the extent it seeks judgment in its favor based on the release clause contained in the November 12, 2014 Settlement Agreement.

B.  Whether DTSC Took Adverse Employment Action Against Plaintiff

Second, DTSC argues in the alternative that it is entitled to summary judgment with regard to plaintiff's Title VII and FEHA claims based on theories of discrimination and retaliation because the undisputed facts demonstrate that DTSC removed all adverse documentation relating to the actions and events alleged in the complaint from plaintiff's personnel file pursuant to the November 12, 2014 Settlement Agreement, and that plaintiff was able to exercise his right of return to his previous position as an AGPA, therefore showing that no actual adverse employment action was taken against plaintiff. Plaintiff contends that DTSC's contention that there was no adverse action due to those remedial actions relies on nothing more than a fiction because plaintiff was actually rejected from his probation and could not continue on in the SSM-I position at DTSC regardless of whether any mention of that rejection and the surrounding events were removed from his personnel file.

Both Title VII and the FEHA make it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1); Cal. Gov. Code § 12940(a).[7]

_____

[7] Because the FEHA is generally interpreted consistently with Title VII, see Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317 (2000), the court conducts its analysis of both plaintiff's federal and state

11

"To establish a *prima facie* case under Title VII and the FEHA, a plaintiff must offer proof:

(1) that the plaintiff belongs to a class of persons protected by Title VII [and the FEHA]; (2) that

the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse

employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a

similarly situated employee who does not belong to the same protected class as the plaintiff."

Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

The United States Supreme Court has described adverse employment action for purposes

of a Title VII discrimination claim as "a significant change in employment status, such as . . .

*firing, failing to promote, reassignment with significantly different responsibilities, or a decision*

*causing a significant change in benefits*." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761

(1998) (emphasis added). California courts have similarly determined what constitutes adverse

employment action under the FEHA. See Wilson v. Murillo, 163 Cal. App. 4th 1124, 1134-35

(Cal. Ct. App. 2008) ("[T]he 'adverse employment action' threshold is met when the employer's

action impact[s] the 'terms, conditions, or privileges' of the plaintiff's job in a real and

demonstrable way. . . . Examples include *discharge, demotions, refusal to hire, nonrenewal of*

*contracts, and failure to promote*.") (emphasis added).

Title VII and the FEHA also prohibit retaliation against a person who has exercised his

rights under Title VII of the Civil Rights Act of 1964 ("the Act") by claiming discrimination or

seeking to enforce the Act's provisions. 42 U.S.C. § 2000e-3(a); Cal. Gov. Code § 12940(h). In

order to meet his burden in a case of retaliation under Title VII and the FEHA, the plaintiff-

employee must plead and prove three elements: (1) his involvement in a protected activity under

Title VII proceedings; (2) his further mistreatment or discharge by the defendant-employer; and

(3) the existence of a causal connection between the original Title VII action and the mistreatment

or discharge. EEOC v. Hacienda Hotel, 881 F.2d 1504, 1512 (9th Cir. 1989) (overruled on other

grounds); Westendorf v. West Coast Contractors of Nevada, Inc., 712 F.3d 417, 422 (9th Cir.

discrimination and retaliation claims according to Title VII case law, except for when the
standards under the FEHA substantially differ.

12

2013).

The anti-retaliation provision of Title VII exists to prevent employer interference to the Title VII remedies. Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 63, 64 (2006). Therefore, the provision only covers employer actions that "would have been materially adverse to a reasonable employee or job applicant." Id. at 57. In contrast with the definition of an adverse action in the discrimination context, which must affect the employee's terms and conditions of employment, an adverse employment action in the retaliation context "must be harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id.; Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000). Materiality of the challenged action is judged from the perspective of a reasonable person in the plaintiff's position considering all the circumstances. Burlington Northern, 548 U.S. at 71. However, the FEHA differs slightly, requiring the same standard as a Title VII discrimination claim: an adverse action "must materially affect the terms, conditions, or privileges of employment." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1052 (2005).

Here, the undisputed facts, and the evidence supporting those facts, demonstrate that plaintiff was arguably subject to an adverse employment action for purposes of his discrimination claims under Title VII and the FEHA. DTSC asserts that the undisputed facts demonstrate that no adverse action was actually taken against plaintiff because DTSC removed all adverse documentation relating to the actions and events alleged in the complaint, including the documents regarding plaintiff's rejection from the SSM-I position at the end of the probationary period, from plaintiff's personnel file, and because plaintiff was able to return to his prior position as an AGPA. However, the practical effect of DTSC's rejection of plaintiff at the end of his probationary period remains regardless of whether all documentation of such an event was removed from his personnel file and whether he was able to return to his prior job status. DTSC's refusal to pass plaintiff on probation still resulted in plaintiff losing his position with DTSC as an SSM-I. In effect, DTSC's employment action amounted to either a demotion or a failure to promote, and certainly was a decision that caused a significant change in plaintiff's benefits. While plaintiff may have been a probationary employee at the time of DTSC's action, and

13

therefore may not have had a vested right to the SSM-I job under California's civil service rules,

the practical effect of DTSC's refusal to pass plaintiff on probation still had a negative material

impact on the terms, conditions, or privileges of plaintiff's employment regardless of the fact that

the paper trail leading to that action was removed from plaintiff's personnel file.[8]  Accordingly,

DTSC cannot prevail on summary judgment with regard to plaintiff's discrimination claims on

the basis that plaintiff did not suffer an adverse employment action.  See Burlington Indus., Inc.,

524 U.S. at 761 (1998); Wilson, 163 Cal. App. 4th at 1134-35.  For that same reason, DTSC also

cannot prevail on summary judgment with regard to plaintiff's retaliation claim asserted under the

FEHA.  See Yanowitz, 36 Cal. 4th at 1052.

Similarly, with regard to plaintiff's retaliation claim against DTSC under Title VII, it is

clear that there exists a material issue as to whether DTSC's actions, even in light of its

subsequent removal of the Rejection on Probation and all supporting documentation, including

the probationary reports and counseling memoranda, from plaintiff's personnel file, were

materially adverse to a reasonable employee.  It may very well be that a factfinder looking at such

a claim based on the undisputed facts and the evidence DTSC presents in support of its motion

could find that a reasonable worker would be dissuaded from filing a charge of discrimination

when faced with the threat of not passing probation, thus ultimately resulting in his removal from

the position, if he were to move forward with that charge.  See Burlington Northern, 548 U.S. at

71.  Furthermore, the evidence DTSC presents in support of its motion shows that plaintiff was

already on notice that his supervisors at DTSC took a negative view of his actions, including his

actions relating his concerns regarding the alleged discrimination of himself and others, by the

time he filed his first EEOC charge, thus reasonably suggesting that his filing of such a charge

would cause a reasonable worker to believe there existed a real risk that he would be rejected on

---

[8] During the hearing, counsel for DTSC made the additional argument that the undisputed fact
that plaintiff voluntarily agreed to return to his prior position as an AGPA by signing the
Settlement Agreement means that DTSC did not take an adverse action against plaintiff.
However, this additional argument is not well taken because, as discussed above, there still exists
a dispute of material fact regarding whether the terms of the Settlement Agreement actually cover
the claims at issue in this action, which are based on plaintiff's then-existing EEOC charges that
were expressly exempted from any release under that agreement.

14

probation as a result of his undertaking that protected action.  Accordingly, the court denies DTSC's motion for summary judgment insofar as it seeks the entry of judgment in its favor with regard to plaintiff's discrimination and retaliation claims asserted against it.

V.    CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that DTSC's motion for summary judgment (ECF No. 26) is DENIED.

Dated:  April 18, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE